1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RAVI NARYAN,                              No.  2:22-CV-0971-DMC

12              Plaintiff,

13         v.                                  MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 7 and 8, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 12 and

23   13.

24            The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

                                              1

1   a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2   including both the evidence that supports and detracts from the Commissioner's conclusion, must

3   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16              **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20          Step 1       Determination whether the claimant is engaged in
                          substantial gainful activity; if so, the claimant is presumed
21                        not disabled and the claim is denied;

22          Step 2       If the claimant is not engaged in substantial gainful activity,
                          determination whether the claimant has a severe
23                        impairment; if not, the claimant is presumed not disabled
                          and the claim is denied;
24
            Step 3       If the claimant has one or more severe impairments,
25                        determination whether any such severe impairment meets
                          or medically equals an impairment listed in the regulations;
26                        if the claimant has such an impairment, the claimant is
                          presumed disabled and the claim is granted;
27

28  / / /

2

|   |   |
|---|---|
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 19, 2019.  See CAR 28.[1]  In the application, Plaintiff claims disability began on February 15, 2017.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 15, 2021, before Administrative Law Judge (ALJ) Sara A. Gillis.  In a June 3, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine, history of traumatic brain injury (TBI)/cognitive disorder, status-post right ankle fracture, and posttraumatic stress disorder (PTSD);

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity: light work as defined in 20 CFR 416.967(b) except: only occasional stooping, kneeling, crouching, crawling and climbing stairs; must avoid hazards such as unprotected heights and moving machinery; limited to occupations involving simple work-related instructions and simple work-related decisions; no more than occasional changes to the routine work setting; no more than occasional interactions with supervisors and coworkers; and no interactions with members of the public;

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 30-40.

After the Appeals Council declined review on January 18, 2022, this appeal followed.

/ / /

/ / /

/ / /

/ / /

---

[1]     Citations are to the Certified Administrative Record (CAR) lodged on September 6, 2022, ECF No. 11-1.

1

### III.  DISCUSSION

Plaintiff argues: (1) the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of treating and examining physicians; and (2) the ALJ failed to develop the record as expert opinions were made without medical records.

#### A.      <u>Evaluation of Medical Opinions</u>

"The ALJ must consider all medical opinion evidence." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  <u>See</u> <u>id.</u>

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec. Admin.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  <u>See</u> <u>Dale v. Colvin</u>, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  <u>See</u> <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017), <u>but see</u> <u>Revels v. Berryhill</u>, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

6

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated the medical opinion evidence of record to determine Plaintiff's residual functioning capacity (RFC).  See CAR 34-40.  In particular, the ALJ evaluated opinions from the following sources: (1) consultative physical examiner Christine Fernando, M.D.; (2) consultative psychological examiner T. Renfro, Psy.D; (3) state agency medical consultants D. Pong, M.D.; G. Williams, M.D.; S. Hanna, M.D.; S, Amon, M.D.; and H. Jone, M.D., who examined Plaintiff's physical RFC; and (4) state agency medical consultants S. Regan, M.D.; Jane Dubois, PhD; Aroon Suansilppongse, M.D.; F. Mateus, M.D.; and Robert Liss, PhD, who examined Plaintiff's mental RFC.  Id.

The ALJ found Dr. Fernando's opinion to be "not persuasive," and Dr. Renfro's opinions to be "partially persuasive."  Id.  The ALJ gave "persuasive value" to Drs. Hanna, Amon, and Jone because they "had the opportunity to review additional records that neither Dr. Pong nor Dr. Williams were able to review" allowing their opinions to "better reflect the claimant's limitations throughout the relevant period."  Id.  Furthermore, the ALJ gave "persuasive value" to only Drs. Mateus and Liss regarding Plaintiff's mental RFC, stating that "[a]ll others opine there was insufficient evidence to form a residual functional capacity."  Id.  Notably, the ALJ stated that Drs. Mateus and Liss "supported their opinions through explanation and citation to Dr. Renfro's consultative evaluation."  Id.  Plaintiff argues the ALJ failed to provide specific and legitimate reasons for discounting the opinions of "treating doctors and psychiatrists." See ECF No. 12, pgs. 7-14.

/ / /

/ / /

1          1.  Dr. Fernando

2                  Regarding Plaintiff's physical capacity, the ALJ evaluated the opinion of Dr.

3   Fernando, as well as Drs. Hanna, Amon, and Jone.  The ALJ found Dr. Fernando's to be "not

4   persuasive," stating:

5               The claimant presented to a November 2019 consultative physical
                examination with Christine Fernando, M.D. reporting a history of head
6               injury with memory issues and back pain. (Exhibit C9F/1) On
                examination, he did not appear in acute distress, but he was noted to get
7               into and out of a chair very slowly. (Exhibit C9F/3) He had 35 pounds of
                grip strength in his right hand and 25 pounds of grip strength in his left
8               hand. He had good muscle tone and strength in all four extremities.
                (Exhibit C9F/4) No muscle wasting or weakness was noted. A back
9               examination was not performed as he complained of significant
                discomfort with any range of motion. He had no tenderness in his upper
10              extremities, including his elbows. Examination of his lower extremities
                was normal, but he reported pain in his back with range of motion testing
11              of his hips. (Exhibit C9F/5) He had 5/5 strength in all extremities,
                sensation was intact throughout, reflexes were normal, coordination was
12              normal, and cranial nerve testing was intact. He was unable to stand on his
                toes or heels or perform tandem gait. Balance issues were noted, but he
13              was able to get on and off the examination table without difficulty. He did
                not use an assistive device.
14
                Based on this evaluation, Dr. Fernando opined the claimant could lift and
15              carry less than 10 pounds occasionally or frequently. (Exhibit C9F/6) He
                could stand and/or walk for less than two hours in an eight-hour workday,
16              and sit for six hours in an eight-hour workday. He could frequently bend,
                stoop, kneel, and crouch. He could occasionally push and/or pull. He must
17              avoid climbing ladders, working at heights, or operating heavy machinery.
                The undersigned considered this opinion, and finds it not persuasive. This
18              opinion is not consistent with the record, nor is it supported by the
                evidence. Further, it is internally inconsistent as the claimant was noted to
19              have normal gait and station. Additionally, the claimant did not participate
                in any evaluation of the back. As noted above, physical examinations prior
20              to this consultative examination were entirely normal except as noted in
                the April and May 2017 examinations.
21
                CAR 36-37.
22

23                 Plaintiff argues that "the ALJ (and the agency consultants) failed to properly reject

24  the opinions of examining Doctor Fernando. . . by providing specific and legitimate reasons for

25  doing so that are based on substantial evidence in the record."  See ECF No. 12, pg. 13.  Plaintiff,

26  throughout their motion, references the "treating physician rule" which, under prior regulations,

27  required the ALJ to defer to certain physicians.  At the outset, the Court rejects Plaintiff's

28  assertion that this rule applies. Under the current standard, the ALJ evaluates opinions and prior

8

1   administrative medical findings by considering their "persuasiveness."  Medical opinions under

2   the revised 2017 regulations begin on equal footing, and ALJ is "not required to discuss the

3   relationship between the doctor and the claimant at all, unless two opinions that regard the same

4   issue but are not exactly the same are equally well-supported and consistent with the record."  20

5   C.F.F. § 404.1520c(b)(2)-(3) (2017).

6            Plaintiff further argues that "[t]he ALJ's contention that Dr. Fernando's opinion is

7   not consistent with the record ignores the fact that Dr. Fernando reviewed the records of the

8   treating doctors at Elica [Health Centers]."  See ECF NO. 12, pg. 10.  Plaintiff contends that these

9   records include x-rays, diagnoses, and treatment with medication for the back pain the Plaintiff

10  claims.  Id.  By contrast, the Commissioner states that the specific records Dr. Fernando reviewed

11  are not noted, and that "Dr. Fernando's statement that Plaintiff should have further assessment

12  through x-rays and MRI . . . would suggest that Dr. Fernando was not aware of other objective

13  imaging studies."  ECF No. 13, pg. 10.  The Commissioner then argues that the ALJ "compared

14  Dr. Fernando's uncertainty and Plaintiff's alleged difficulty walking during the examination with

15  other evidence and found the degree of impairment . . . was not supported."  Id.  The Court

16  agrees.

17           In determining persuasiveness, the ALJ concluded that Dr. Fernando's opinion of

18  Plaintiff's physical health was "not persuasive." See CAR 36. The ALJ concluded that Dr.

19  Fernando's opinion was "not consistent with the record, nor is it supported by the evidence,"

20  stating that Plaintiff's "physical examinations were consistently normal and showed no

21  abnormality in his ability to ambulate."  Id. at 37.  The ALJ discussed a physical examination

22  from June 2020 at which the Plaintiff "did not appear in acute distress and he ambulated

23  normally."  CAR 37.  The ALJ also pointed to two other physical examinations in December

24  2020 and February 2021 that were both normal.  Id.  The ALJ stated that Dr. Fernando's opinion

25  was also "internally inconsistent as the claimant was noted to have normal gait and station."  Id.

26  The ALJ noted that "[o]nly the consultative examination shows any limitations," and that this was

27  inconsistent with the rest of the record.  Id.  The Court agrees with the ALJ's reasoning and

28  affirms the Commissioner's findings.

9

1

2.  Dr. Renfro

2

Regarding Plaintiff's mental capacity, the ALJ evaluated the opinion of Dr.

3

Renfro.  The ALJ found Dr. Renfro's opinions "partially persuasive," stating:

4
5
6
7
8
9
10
11
12
13
14
15
16

The claimant presented to a consultative psychological evaluation in January 2020 with T. Renfro, Psy.D. reporting being easily frightened and poor memory. (Exhibit C10F/1) He reported limited, but independent, activities of daily living. (Exhibit C10F/2, 3) On the mental status examination, he was generally cooperative as he responded to questions when prompted to do so. Some psychomotor retardation was evident. He made good eye contact with the examiner. Speech was concrete and monotone, but otherwise clearly articulated. Thought content was normal. His mood was anxious and depressed with congruent affect. He was alert and oriented times four. His digit span was three forward and three backwards. The claimant could recall three items immediately, but no items after 5 minutes. He was unable to name a current or recent event in the news. The claimant was able to correctly name the current President of the United States, however, he did not know the current Governor of California, capital of California, or capital of the United States. The claimant was unable to do simple addition, subtraction, and multiplication calculations, even using his fingers. He incorrectly stated that 5 + 7 = 9, and that 10 - 6 = 8. He did not know the answer to 7 x 9. The claimant was unable to count backwards by 10s from 100 to 0 even in his native language of Hindi. He said, "I don't remember the numbers in English, and I never do it in my native language." He was also unable to spell WORLD correctly forward and backward in Hindi or in English. He was, however, able to follow the conversation fairly well. Insight and judgment were intact.

17
18
19
20
21
22
23
24
25
26
27
28

Based on this evaluation, Dr. Renfro opined that from a psychological standpoint, the claimant's mood symptoms are suspected to remain stable in the next 12 months with active treatment. However, given the nature and duration of symptoms, it is not likely that they will be completely remedied within a year. The claimant's ability to perform simple and repetitive tasks was mildly impaired. The claimant's ability to perform detailed and complex tasks was markedly impaired. The claimant's ability to accept simple instruction from supervisors was mildly impaired. The claimant's ability to interact with coworkers and the public was markedly impaired (heightened anxiety/social isolation/withdrawal). The claimant's ability to perform work activities on a consistent basis without special or additional instruction was moderately impaired. The claimant's ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition was moderately impaired. The claimant's ability to deal with the usual stress encountered in the workplace was markedly impaired. The undersigned considered this opinion, and finds it partially persuasive. The assessment the claimant can perform simple tasks is consistent with the record and supported by the evidence. However, in regard to marked limitations socially, there is no other evidence of impairment in this area of functioning. He interacts well with the medical staff and with his family members and there are no signs of heightened anxiety during his medical appointments. He also deals with the stress of obtaining immigration paperwork on timely basis which is inconsistent with a marked inability to handle work stress. Dr. Renfro also

1

> commented that additional testing should be accomplished given his history of TBI but no further testing was performed here as it had already been conducted previously and there are no objective signs of worsening in the current case.

2

3

CAR 38-39.

4

5        Plaintiff argues that Dr. Renfro examined the records or providers from Elica

6    Health Centers, which were consistent with Dr. Renfro's findings.  See ECF No. 12, pg. 11.  The

7    Commissioner argues, "Dr. Renfro admitted some uncertainty in Plaintiff's cognitive abilities, but

8    the ALJ was required to make a decision on the record as presented—which did not corroborate

9    Plaintiff's allegations of significant memory disfunction."  ECF No. 13, pg. 8.

10       In determining persuasiveness, the ALJ found that the opinions of Dr. Renfro were

11   "partially persuasive."  See CAR 38.  The ALJ's determination was based on the following

12   findings: "[t]he assessment the claimant can perform simple tasks is consistent with the record

13   and supported by the evidence. However, in regard to marked limitations socially, there is no

14   other evidence of impairment in this area of functioning."  Id.  The ALJ supported his conclusion

15   with evidence that the Plaintiff "interacts well with medical staff," there were "no signs of

16   heightened anxiety during his medical appointments," and Plaintiff "deals with the stress of

17   obtaining immigration paperwork on timely basis."  Id.  The Plaintiff fails to indicate evidence

18   that the ALJ ignored or failed to articulate as persuasive.  A review of the ALJ decision shows

19   that the ALJ did review the records provided and supported their decision with substantial

20   evidence.  Plaintiff's contention that the ALJ erred because they failed to give deference to

21   certain physicians is simply incorrect.  The Court affirms the ALJ's findings.

22            3.  Other Treating Source Statements

23       The ALJ also considered claims from the Plaintiff's primary care provider that

24   Plaintiff claimed supported his claim that he would have to be off work for six months at a time.

25   The ALJ concluded the following:

26

> The undersigned also notes opinions by the claimant's primary care provider that 'certify' the claimant has been diagnosed with PTSD and memory problems, and will be off work for six months at a time. (Exhibit 12CF) These opinions are scattered throughout the record and the undersigned finds them not persuasive. As outlined above, mental status

27

28

1  examinations performed by his primary care provider were routinely
   normal and the mental health record shows no impairment with his
2  memory. These opinions are not consistent with examinations and are not
   supported by the record. Further, any interpretation of this narrative as
3  finding the claimant disabled is given no persuasive value as this is a
   question reserved for the Commissioner. (20 CFR 404.1527(d) and
4  416.927(d))

5  CAR 40.

6  Plaintiff contends that the ALJ incorrectly rejected these opinions. Plaintiff argues

7  that the following facts invalidate the ALJ's findings: Plaintiff (1) had been diagnosed with

8  PTSD, along with other mental diagnoses; (2) had missed appointments due to the COVID-19

9  pandemic; and (3) the ALJ seemed to give more weight to certain examination findings. ECF No.

10  12, pg. 9. The Commissioner argues that the ALJ did not err, stating: "The ALJ discussed the

11  mixed record, but properly concluded that the record supported the RFC that otherwise gave very

12  significant limitations in the complexity of work that Plaintiff could perform and the environment

13  in which he could work." ECF No. 13, pg. 14.

14  The Court agrees with the Commissioner that the ALJ's decision is supported by

15  substantial evidence. The ALJ noted that "[o]nly the consultative evaluation note[d] impairment

16  in cognitive functioning." CAR 39. Otherwise, the medical records indicated that Plaintiff's

17  "memory was intact, concentration was normal, and judgment was fair." Id. The ALJ noted a

18  July 2019 evaluation where Plaintiff's appearance, psychomotor behavior, speech, judgment, and

19  concentration were all normal, despite an anxious and depressed mood. CAR 37. The ALJ also

20  cited a February 2021 mental health assessment that "remained unchanged from the July 2019

21  assessment." CAR 39. Furthermore, the ALJ did consider the opinions of Plaintiff's primary

22  care physician but found them unpersuasive. CAR 40. The ALJ addressed supportability and

23  consistency, stating that the opinions of the primary care provider were "scattered throughout the

24  record," but were "not consistent with examinations and [were] not supported by the record." Id.

25  The Court agrees with the ALJ's reasoning and affirms their findings.

26  / / /

27  / / /

28  / / /

12

1

**B.      Duty to Develop the Record**

2      The ALJ has an independent duty to fully and fairly develop the record and assure

3 the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

4 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

5 especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

6 and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v.

7 Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

8 the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may

9 discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

10 questions to the claimant's physicians, continuing the hearing, or keeping the record open after

11 the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

12 599, 602 (9th Cir. 1998)).

13      Plaintiff first argues:

14
15
16
17
18

> The ALJ gave significant weight to agency opinions after DDS
> determined there was a need for consultative exams. The ALJ rejected
> crucial parts of the opinions of the consultative examiners on which the
> agency opinions were supposed to be based. The agency doctors upon
> which she relied rejected crucial parts of the opinions of both consultative
> examiners despite citing a need for consultative opinions. The ALJ had the
> opportunity to order new medical exam or to send the additional medical
> and mental health opinion evidence to the agency for further opinion, but
> did not do so.

19      ECF No. 12, pg. 14.

20      Though Plaintiff places this contention under the section about a failure to develop

21 the record, Plaintiff fails to show how this would constitute failure to develop the record.  A duty

22 to develop the record is "triggered only where there is an inadequacy or ambiguity."  Digiacomo

23 v. Saul, 2020 WL 6318207, at *8 (E.D. Cal., Oct. 28, 2020).  Plaintiff fails to address any specific

24 inadequacy or ambiguity within the record, but rather states a disagreement with the outcome of

25 the ALJ hearing. There is simply not sufficient argument from the Plaintiff to show that the duty

26 to develop the record was triggered here.

27 / / /

28 / / /

1    Plaintiff further argues:

2         Here, the ALJ relied on the agency report, but the agency opinions
     were rendered in the absence of a year of records of PRSD by the treating
3    doctors and declarations of limitations by treating sources, so at a
     minimum, the ALJ had a duty to provide the new doctors' records to the
4    agency for an updated opinion.

5    ECF No. 12, pg. 15.

6         Again, Plaintiff fails to specify what records they are referring to and the content

7    within them. Plaintiff does not allege that there was an ambiguity or inadequacy within the

8    record. Plaintiff makes conclusory statements without providing context or evidence that would

9    trigger the duty to develop the record further. "The mere existence of medical records post-dating

10   a State agency physician's review does not in and of itself trigger a duty to further develop the

11   record." Digiacomo, 2020 WL 6318207, at *8.

12        Plaintiff has not established that the record was ambiguous or inadequate to allow

13   for proper evaluation, and the ALJ did not find that the record was ambiguous or inadequate to

14   determine disability. Plaintiff fails to cite to a single source to bolster their argument and fails to

15   provide any ambiguous or inadequate treatment notes, medical opinions, or other evidence.

16

17                              **IV.  CONCLUSION**

18        Based on the foregoing, the Court concludes that the Commissioner's final

19   decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

20   ORDERED that:

21        1.    Plaintiff's motion for summary judgment, ECF No. 12, is DENIED.

22        2.    Defendant's motion for summary judgment, ECF No. 13, is GRANTED.

23        3.    The Commissioner's final decision is affirmed.

24        4.    The Clerk of the Court is directed to enter judgment and close this file.

25

26   Dated:  July 24, 2023

27                              _____
                                DENNIS M. COTA
28                              UNITED STATES MAGISTRATE JUDGE

                                        14